# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Tonianne J. Bongiovanni |
| v. | Mag. No. 22-3006 (TJB) |
| STEVEN G. THOMAS | **CRIMINAL COMPLAINT** |

I, James R. Haines, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the U.S. Department of Homeland Security, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

S/ James R. Haines
James R. Haines
Special Agent
U.S. Department of Homeland Security

Special Agent James R. Haines attested to this Complaint
by telephone pursuant to FRCP 4.1(b)(2)(A),
on February 22, 2022 in the District of New Jersey

HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE
Signature of Judicial Officer

RECEIVED
FEB 22 2022
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

## ATTACHMENT A

On or about April 20, 2021, in Somerset County, in the District of New Jersey and elsewhere, the defendant

## STEVEN G. THOMAS

did knowingly use, attempt to use, possess, obtain, accept, and receive an immigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, and falsely made, and to have been produced by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, and would and did make under oath, and as permitted under penalty of perjury under section 1746 of Title 28, United States Code, subscribe as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and would and did present such application, affidavit, and other document which contained such false statement and which failed to contain a reasonable basis in law and fact.

In violation of Title 18, United States Code, Section 1546(a).

**ATTACHMENT B**

I, James R. Haines, am a Special Agent with the U.S. Department of Homeland Security. I am aware of the facts contained herein based upon interviews and briefings with other law enforcement officers. I also have reviewed or been briefed regarding other evidence, including witness interviews and video recordings. Because this complaint is being submitted for the limited purpose of establishing probable cause, I have not set forth herein each and every fact that I know or that has been told to me concerning this investigation. Unless specifically indicated, any statements herein attributed to individuals are set forth in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. All referenced times are approximate and refer to Eastern Time.

**Background**

1. Defendant Steven G. Thomas ("THOMAS"), is an attorney who operates a law firm based in Montgomery Township, New Jersey (the "Thomas Firm").

2. According to former clients who have spoken to law enforcement, THOMAS encouraged clients to apply for asylum under fraudulent pretenses. Among other things, THOMAS advised clients regarding the manner in which they were most likely to obtain asylum, knowing that these clients did not legitimately qualify for asylum. THOMAS also prepared, or caused to be prepared, fraudulent affidavits on behalf of those clients, which were submitted as part of the clients' asylum applications. These affidavits, which were designed to support clients' persecution claims, conveyed purported aspects of clients' personal histories that were filled with falsehoods, including events and incidents of alleged persecution that were concocted by THOMAS or others at the Thomas Firm, under his direction. Former clients of the Thomas Firm stated that they were instructed to memorize the details of these false affidavits and coached to lie under oath during interviews conducted by the United States Citizenship and Immigration Services ("USCIS") asylum officers.

3. USCIS is an agency of the United States Department of Homeland Security responsible for receiving and adjudicating immigrant and non-immigrant applications and petitions, including, but not limited to, Form I-589, Application for Asylum and Withholding of Removal ("Form I-589"), and Form I-131, Application for Travel Document ("Form I-131").

4. Pursuant to federal immigration law, non-citizens seeking asylum are required to complete and present a form, Form I-589, to USCIS. The Form I-589 requires a detailed and specific account of the basis of the claim to asylum. Asylum applicants are permitted to append to the Form I-589 an

3

affidavit ("Asylum Affidavit"), providing greater detail about the applicant's background and basis for seeking asylum. The applicant must demonstrate that he or she is a "refugee," meaning, in general terms that he or she is unable to return to his or her country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. If the Form I-589 is prepared by someone other than the applicant or a relative of the applicant, such as an attorney, the preparer is required to set forth his or her name and address on the form. The asylum applicant and preparer are required to sign the petition under penalty of perjury.

5. A review of the affidavits filed by the Thomas Firm in support of asylum between 2015 and 2019 revealed that many affidavits contained identical language. For example, a review of 100 asylum applications filed by the Thomas Firm between 2015 and 2019 revealed that at least thirteen of the affidavits filed by the Thomas firm contained the following identical language:

> We lived together cramped in one room built out of a combination of mud, wood and cardboard. There was no kitchen, bathroom, electricity nor any running water. When it rained, the water would pour in through the cardboard roof and soak us. Our living conditions were so bad that we were constantly contracting different illnesses which we had to endure because we had no access even to the most basic forms of medical care.

6. There is no indication that the affiants associated with those thirteen applications had any relation to one another, such that they would have endured identical circumstances.

**The Confidential Informant**

7. In or around January 2021, THOMAS met with a confidential informant (the "CI") who, at the direction of law enforcement, was posing as a non-citizen seeking legal status in the United States. During the meeting, the CI informed THOMAS they had been present in the United States for approximately twenty years, and THOMAS told the CI they could apply for asylum on the basis of the violent situation in the CI's home country, and that the asylum application would cost $18,000.

8. In or around March 2021, the CI had a second meeting with THOMAS. In this meeting, the CI told THOMAS that they had never been the victim of violence while living in their home country and did not participate in politics. Despite this, THOMAS indicated they could proceed with the asylum application.

9.  During the March 2021 meeting, THOMAS explained to the CI that once the CI's asylum application was filed, THOMAS could help the CI obtain permission to travel, if the CI could obtain a doctor's note indicating a family member in the CI's home country was suffering from a serious medical condition. THOMAS explained that if the CI obtained a travel permit, the CI could then lawfully re-enter from the CI's home country, which would allow the CI to apply for residency status in the United States, given that the CI had a child who is a U.S. citizen, and thereby bypass the asylum process.[1] THOMAS further explained to the CI that because the CI had entered the United States unlawfully, immigration laws would not allow the CI to change the CI's status through their child, but that if the CI obtained a permit to travel to the CI's home country and then re-entered the United States legally, the CI could apply for residency, using the child as a petitioner.

10. In or around April 2021, the CI received a mailing from the Thomas Firm containing a letter instructing the CI to sign: (1) the enclosed signature pages from the CI's I-589 application and anticipated I-131 advance parole application; and (2) a blank signature page with a line for the CI's signature and a blank space for a notary's signature. The CI signed the enclosed paperwork and hand delivered the paperwork to the Thomas Firm.

11. On or about April 20, 2021, THOMAS mailed a Form I-589 asylum application to USCIS on behalf of the CI (the "Filed Form I-589") and an Accompanying Asylum Affidavit (the "Filed Affidavit"). The Filed Form I-589 listed THOMAS's name, address, and signature as the preparer of the document. Immediately above THOMAS's signature read the words "I am aware that the knowing placement of false information on the Form I-589 may subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a)."

12. Neither THOMAS nor any representative of the Thomas Firm shared the Filed Affidavit with the CI before it was filed. Appended to the Filed Affidavit was the signature page the CI had previously signed and delivered to the Thomas Firm; a representative of the Thomas Firm notarized the CI's signature after the fact.

13. The Filed Form I-589 and the Filed Affidavit contained numerous false statements. Specifically, the Filed Form I-589 stated the following:

---

[1] Non-citizens with pending asylum applications may apply for permission to travel outside—and subsequently re-enter—the United States, by filing Form I-131, Application for Travel Document ("Form I-131"). Applicants must demonstrate an urgent, humanitarian need to travel outside the United States. This is referred to as obtaining "advance parole."

    a. The box indicating "Yes" is marked in response to question 1A on the Filed Form I-589, which asked "Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?"

    b. The response to question 1A on the Filed Form I-589 further states: "I began to be harassed, intimidated, and threatened in a way that I began to fear for my life, and the lives of my relatives living in the same area. There was an attempt against my life."

    c. The box indicating "Yes" is marked in response to question 1B on the Filed Form I-589, which asked "Do you fear harm or mistreatment if you return to your home country?"

    d. The response to question 1B on the Filed Form I-589 further states: "I fear returning to Mexico. I fear that upon return, I will be immediately targeted for persecution, torture and elimination on account of my race, and an imputed political opinion in view of my previous challenge to CTM,[2] now a notoriously corrupt institution, apparently with the blessing of the Mexican government."

    e. The response to question 5 on the Filed Form I-589 (asking for the reason that the CI had waited more than a year to file the application) states: "When I first arrived in this country I was scared to face the authorities and request asylum because I believed that whatever I told them would be relayed to the Mexican authorities, and the people from CTM, who might even attack me and my son in this country. I was also depressed, as a result of what had happened to me."

    14. After the CI's asylum application had been received by USCIS, a representative of the Thomas Firm reached out to the CI, indicating that the CI was now eligible to apply for advance parole, if the CI could provide the necessary medical documentation.

---

[2] The Confederation of Mexican Workers (Confederación de Trabajadores de México ("CTM")) is the largest confederation of labor unions in Mexico.